# 24-1575-cv

## United States Court of Appeals
#### for the
## Second Circuit

NATALIA LA ROSA, KEYA JOHNIGAN, PHOEBA CANEDA, on behalf
of themselves and all others similarly situated, BRIANNA McKAY,
EMILY DEPOL, AMIE ADAIR, PRUSHTI DAVE, ARLENE BERGUM,
STEPHANIE MORALES, CATHERINE TIPLING, NICHELLE WHITE,

*Plaintiffs-Appellants,*

– v. –

ABBOTT LABORATORIES, PROCTER & GAMBLE MANUFACTURING CO,
SPD SWISS PRECISION DIAGNOSTICS GMBH, CHURCH & DWIGHT
CO., INC., TARGET CORPORATION, WALGREEN CO., ALERE,
CVS PHARMACY, INC., WALMART, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

MARK A. FINKELSTEIN
MOLLY MAGNUSON
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, California 92614
(949) 679-0052

PETER A. BINKOW
NATALIE S. PANG
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150

– and –

DANIELLA QUITT
GLANCY PRONGAY & MURRAY LLP
745 Fifth Avenue, 5th Floor
New York, New York 10151
(212) 935-7400

*Attorneys for Plaintiffs-Appellants*

 COUNSEL PRESS    (800) 4-APPEAL • (330811)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................... iii

I.    PRELIMINARY STATEMENT ................................................... 1

II.   JURISDICTIONAL STATEMENT ............................................. 3

III.  ISSUES PRESENTED FOR REVIEW ....................................... 5

IV.  STATEMENT OF THE CASE ................................................... 5

    A.   Factual Background ......................................................... 5

    B.   Procedural History ........................................................... 8

    C.   The District Court's Order ......................................... 10

V.    SUMMARY OF ARGUMENT ................................................... 11

VI.  ARGUMENT ............................................................................ 14

    A.   Standard of Review ..................................................... 14

    B.   Plaintiffs Stated Claims For Violations Of New York And California Consumer Protection Laws .................................. 16

        1.   The District Court Erred As A Matter Of Law In Finding That No Reasonable Consumer Could Be Misled By Defendants' Representations ................................... 17

            a.   The District Court Failed To Consider Defendants' Representations As A Whole And In Context .................................................... 17

            b.   The District Court Erroneously Applied A Heightened Reasonable Consumer Standard, Which, If Adopted, Would Render The Reasonable Consumer Test Meaningless ....................... 21

            c.   The District Court Erred In Finding That The FDA's Statement Does Not, At A Minimum, Present A Factual Dispute That Cannot Be Resolved On A Motion To Dismiss ............................... 27

        2.   Plaintiffs Sufficiently Alleged Reliance ................................... 30

i

3.      Plaintiffs Sufficiently Alleged That They Suffered
        Injury ...................................................................................... 32

C.      Plaintiffs Have Standing To Seek Injunctive Relief .......................... 38

D.      The Complaint Sufficiently Alleged The Products At Issue .............. 43

E.      The District Court Erred In Finding That The New York
        Plaintiffs Failed To State A Claim For Unjust Enrichment ............... 46

F.      The District Court Abused Its Discretion In Denying
        Plaintiffs Leave To Amend ................................................................ 49

VII.    CONCLUSION ................................................................................. 50

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Acquard v. Big Heart Pet Brands, Inc.*,
No. 19-CV-50-JLS, 2020 WL 12904361 (W.D.N.Y. Nov. 30, 2020)...................47

*Amusement Indus. Inc. v. Stern*,
693 F. Supp. 2d 327 (S.D.N.Y. 2010)........................................................... 46-47

*Anderson v. Unilever U.S., Inc.*,
607 F. Supp. 3d 441 (S.D.N.Y. 2022)...................................................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................15

*Axon v. Florida's Nat. Growers, Inc.*,
813 F. App'x 701 (2d Cir. 2020)............................................................36

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003).......................................................... 40, 43

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015)......................................................34

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................15

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)........................................................... 40, 41

*Buonasera v. Honest Co., Inc.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016)....................................................45

*Campbell v. Freshbev LLC*,
322 F. Supp. 3d 330 (E.D.N.Y. 2018)....................................................39

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................38

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021)............................................... 34, 36

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........................................................ 41, 42

iii

*DeCoursey v. Murad, LLC*,
   673 F. Supp. 3d 194 (N.D.N.Y. 2023) ................................................................38

*Dorris v. Danone Waters of Am.*,
   No. 22 Civ. 8717 (NSR), 2024 WL 112843 (S.D.N.Y. Jan. 10, 2024).......... 13, 23

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020)...................................................................17

*Fishon v. Peloton Interactive, Inc.*,
   620 F. Supp. 3d 80 (S.D.N.Y. 2022)............................................................... 36-37

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) ................................................................. 19, 30, 31

*Gagetta v. Walmart, Inc.*,
   646 F. Supp. 3d 1164 (N.D. Cal. Dec. 19, 2022) ................................................42

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014)......................................................................36

*Hansen v. Newegg.com Americas, Inc.*,
   25 Cal. App. 5th 714 (2018) .......................................................................... 32, 36

*Hernandez v. Radio Sys. Corp.*,
   No. EDCV 22-1861 JGB (KKx), 2023 WL 4291829 (C.D. Cal. May 10,
   2023) ........................................................................................................ 13, 21, 23

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. and
   Sales Practices Litig.*,
   Case No. 12-md-2320-PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ....... 42-43

*In re Sony PS3 Other OS Litig.*,
   551 F. App'x 916 (9th Cir. 2014) ........................................................................16

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)................................................................................... 30, 31

*John v. AM Retail Group, Inc.*,
   No. 17CV727-JAH (BGS), 2018 WL 1400718 (S.D. Cal. Mar. 20, 2018) ........44

*John v. Whole Foods Mkt. Grp., Inc.*,
   858 F.3d 732 (2d Cir. 2017)..................................................................................34

*Johnson & Johnson * Merck Consumer Pharm. Co. v.
   Smithkline Beecham Corp.*,
   960 F.2d 294 (2d Cir. 1992)..................................................................................20

*Karedes v. Ackerley Grp., Inc.*,
    423 F.3d 107 (2d Cir. 2005)................................................................15

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)...............................................................47

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)........................................... 34-35

*Krasnyi Oktyabr, Inc. v. Trilini Imports*,
    578 F. Supp. 2d 455 (E.D.N.Y. Sept. 25, 2008) ..................................34

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ...................................................... 33, 34, 36

*LaFleur v. Whitman*,
    300 F.3d 256 (2d Cir. 2002)...............................................................40

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
    797 F.3d 160 (2d Cir. 2015)......................................... 14, 49, 50

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986).................................................................14

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018)......................................................... 17, 18

*Mason v. Reed's Inc.*,
    515 F. Supp. 3d 135 (S.D.N.Y. 2021).................................................48

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009)........................................................................32

*Montera v. Premier Nutrition Corp.*,
    Nos. 22-16375, 22-16622, 2024 WL 3659589 (9th Cir. 2024)............17

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ...................................................... 30, 31

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ................................................................24

*Morales v. Kimberly-Clark Corp.*,
    No. 18-CV-7401 (NSR), 2020 WL 2766050 (S.D.N.Y. May 27, 2020) .............39

*Morales v. New York City Dep't of Educ.*,
    808 F. App'x 35 (2d Cir. 2020)..........................................................11

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)..................................................................45

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
   537 F.3d 168 (2d Cir. 2008)..................................................................48

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)........................................................ 38, 39, 40

*Onaka v. Shiseido Americas Corp.*,
   No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023)...............34

*Operating Local 649 Annuity Trust Fund v.*
   *Smith Barney Fund Mgmt. LLC*,
   595 F.3d 86 (2d Cir. 2010)............................................................. 14-15

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)..................................................................16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y. 2d 20 (1995) .................................................................. 30, 34

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017)..................................................................49

*Peterson v. Glad Prods. Co.*,
   No. 23-cv-00491-TSH, 2023 WL 4600404 (N.D. Cal. Jul. 17, 2023)................42

*Petrosino v. Stearn's Prods., Inc.*,
   No. 16-CV-7735 (NSR), 2018 WL 1614349
   (S.D.N.Y. Mar. 30, 2018)....................................................................39

*Plavin v. Grp. Health Inc.*,
   857 Fed. App'x 83 (3d Cir. May 21, 2021) .......................................................48

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ................................................................17

*Richardson v. L'Oreal USA, Inc.*,
   991 F. Supp. 2d 181 (D.D.C. 2013)............................................................42

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)..............................................................42

vi

*Rodriguez v. Hanesbrands Inc.*,
No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018)........................................................36

*Rodriguez v. It's Just Lunch, Int'l*,
2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ......................................35

*Rojas v. General Mills, Inc.*,
No. 12-cv-05099-WHO, 2014 WL 1248017 (N.D. Cal. Mar. 26, 2014) ............45

*Schneider v. Colgate-Palmolive Co.*,
677 F. Supp. 3d 91 (N.D.N.Y. 2023) ....................................48

*Scholder v. Sioux Honey Ass'n Coop.*,
No. CV16-5369 (GRB), 2022 WL 125742 (E.D.N.Y. Jan. 13, 2022) ................49

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
806 F.2d 1393 (9th Cir. 1986) ...................................... 44-45

*Segedie v. Hain Celestial Grp., Inc*.,
No. 14 Civ. 5029 (NSR), 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ......... 15-16

*Sitt v. Nature's Bounty, Inc.*,
No. 15-CV-4199 (MKB), 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016)..... 27, 29

*Steele v. Wegmans Food Markets, Inc.*,
472 F. Supp. 3d 47 (S.D.N.Y. 2020).................................27

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ..........................................41

*Veera v. Banana Republic, LLC*,
6 Cal. App. 5th 907 (2016) ...................................32

*Warner v. StarKist Co.*,
No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019)..........................................................48

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) ............................... 21, 25, 26

*Williams v. Gerber Prods. Co*.,
552 F.3d 934 (9th Cir. 2008) ....................... 15, 19, 20, 29

*Wilson v. Frito-Lay North America, Inc*.,
No. 12-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)................... 45, 46

*Winans v. Ornua Foods N. Am. Inc.*,
No. 2:23-CV-01198-FB-RML, 2024 WL 1741079 (E.D.N.Y. Apr. 23, 2024) ........................................................................... 34, 47

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ..................................... 45

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
592 F. Supp. 3d 146 (S.D.N.Y. 2022) ................................. 23, 27

**Statutes & Other Authorities:**

28 U.S.C. § 1291 .................................................................. 4

28 U.S.C. § 1332(d)(2)(A) ...................................................... 4

28 U.S.C. § 1332(d)(5)(B) ...................................................... 4

Cal. Bus. & Prof. Code § 17200 ......................................... 5, 16

Cal. Bus. & Prof. Code § 17204 ............................................ 32

Cal. Civ. Code § 1770 ....................................................... 5, 16

Cal. Civ. Code § 1780 ......................................................... 32

Fed. R. Civ. P. 8(d)(3) .................................................... 48, 49

Fed. R. Civ. P. 9(b) ........................................................... 14

Fed. R. Civ. P. 12(b)(6) ............................................. 11, 12, 14

Fed. R. Civ. P. 15 .......................................................... 14, 49

Fed. R. Civ. P. 15(a) ......................................................... 14

Fed. R. Civ. P. 15(a)(2) ...................................................... 49

Fed. R. Civ. P. 23(b)(2) ...................................................... 41

Fed. R. Civ. P. 41(a)(1)(A)(i) ................................................. 9

GBL § 349 ............................................................... *passim*

GBL § 350 ............................................................... *passim*

## I.    PRELIMINARY STATEMENT

This case arises from the marketing and sale by Defendants of consumer products that claim on their packaging to be "ovulation" test kits that are "99% accurate" (or more), but which, it is undisputed, do not actually test for ovulation. In actuality, the kits detect only whether there has been a spike in a person's luteinizing hormone ("LH") level, which can be indicative that ovulation will occur in the near future, but also can be indicative of other changes occurring throughout a woman's menstrual cycle or health conditions which are wholly unrelated to ovulation, and thus, the kits do not predict ovulation with 99% accuracy.  Plaintiffs in this class action consist of misled purchasers of Defendants' so-called "ovulation" test kits who bring claims on behalf of themselves and similarly deceived California and New York consumers.

Overlooking the deference due Plaintiffs' well-pled factual allegations at the pleading stage and in disregard of well-established precedent holding that only in "rare situations" may a district court appropriately determine that a statement is not deceptive as a matter of law, the District Court dismissed Plaintiffs' Complaint and entered judgment in favor of Defendants.  In so ruling, and in holding that a reasonable consumer could not as a matter of law have been misled by Defendants' packaging, the District Court erred in a number of respects.

1

First, the District Court failed to consider the entirety and full context of Defendants' advertisements, which were not limited to misleading statements that the kits tested for ovulation with 99% accuracy, but also included numerous other representations and depictions—including photographs of babies—all of which could plausibly mislead a reasonable consumer as to what they were purchasing. The District Court's ruling also incorrectly found that language on the side and back of the packaging at issue purportedly "clarified" that the products test for LH, not ovulation, despite that the law does not expect consumers to engage in such an exercise and despite that the language at issue here was, in fact, not clarifying.

Second, the District Court's ruling applied an arbitrary heightened reasonable consumer standard to purchasers of Defendants' test kits, holding that the tests "are a specialty item targeted to an informed class of consumers" who are "undoubtedly more likely to exhibit a higher standard of care." Pursuant to this unsupported standard, the District Court concluded that a reasonable consumer would know that it is "impossible to test for actual ovulation". But this so-called impossibility, which the District Court couched as fact, was instead the District Court's own scientific opinion which was based solely on the District Court's interpretation of a statement from an FDA webpage that generally describes at-home urine ovulation tests, and which the District Court also failed to view in context and in its entirety. As explained below, the District Court's conclusion was not based on any standard set

by legal precedent and was not supported by the allegations pled or other evidence before it, such as extrinsic evidence demonstrating that reasonable consumers would be aware of the FDA statement or would have any understanding of the FDA statement (among other things).

The District Court also erred, as set forth below, in dismissing the New York Plaintiffs' unjust enrichment claim and in denying Plaintiffs' leave to amend their Complaint.

For these reasons and for the reasons set forth more fully below, the Judgment of the District Court should be reversed, and the case should be remanded for further proceedings.

## II. JURISDICTIONAL STATEMENT

This appeal is from a final judgment that disposes of all of the claims of Plaintiffs Natalia La Rosa, Phoebe Caneda, Catherine Tipling, Prushti Dave, Arlene Bergum, Emily DePol, Keya Johnigan, Brianna McKay, Amie Adair, Stephanie Morales and Nichelle White ("collectively "Plaintiffs") in this action against Defendants SPD Swiss Precision Diagnostics GmBH ("SPD"), Church & Dwight Co., Inc. ("Church & Dwight"), Target Corporation ("Target"), Walgreen Co. ("Walgreens"), CVS Pharmacy, Inc. ("CVS") and Walmart, Inc. ("Walmart") (collectively, "Defendants").

The District Court had subject matter jurisdiction over this case pursuant to the Class Action Fairness Act of 2005, which provides for the original jurisdiction of federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiffs are citizens of New York and California; Defendants are citizens of Switzerland, Ohio, Illinois, New Jersey, Minnesota, Delaware, Rhode Island, and Arkansas. A37-38 ¶¶ 40-45 (ECF No. 92). Plaintiffs further allege that the amount in controversy is in excess of $5 million in the aggregate, exclusive of interest and costs. A29 ¶ 6. Finally, Plaintiffs allege that the number of members of all proposed classes in the aggregate is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B); A50-52 ¶¶ 75, 81.

On May 7, 2024, the District Court entered an Opinion and Order granting Defendants' motion to dismiss Plaintiffs' Complaint in its entirety, without leave to amend, and directing the Clerk to enter Judgment. A196-214. Judgment was entered by the Clerk against Plaintiffs on May 9, 2024. A215. Plaintiffs filed a timely Notice of Appeal on June 6, 2024. A216. This Court thus has jurisdiction pursuant to 28 U.S.C. § 1291.

4

III.   **ISSUES PRESENTED FOR REVIEW**

1.     Whether the District Court erred in holding that Plaintiffs' Complaint failed to allege violations of New York General Business Law (the "GBL") Sections 349 and 350, California's Consumers Legal Remedies Act (Cal. Civ. Code § 1770, *et seq*.) (the "CLRA"), and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq*.) (the "UCL").  Specifically, whether the District Court erred in failing to consider Defendants' representations together and in context, and whether the District Court misapplied the standards governing whether a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' representations.

2.     Whether the District Court erred in dismissing the New York Plaintiffs' claim for unjust enrichment on the grounds that Plaintiffs failed to state a claim for relief.

3.     Whether the District Court abused its discretion in dismissing the Complaint without granting leave to amend the Complaint.

IV.   **STATEMENT OF THE CASE**

**A. Factual Background**

Defendants sell consumer products that claim to be "ovulation" test kits (the "Kits") and that, according to the Kits' packaging, are (at least) "99% accurate" at

5

testing for ovulation. It is undisputed, however, that the Kits do **_not_** test for ovulation and the Kits are **_not_** 99% accurate at predicting ovulation.

Many couples experience difficulty trying to conceive.[1] In these cases, ovulation is arguably the *only* thing that matters, as that is the only time conception is possible. A44-45 ¶¶ 57-60. Preying on consumers' hopes, Defendants market their Kits to highlight the term "ovulation." The Kits claim an ability to detect and predict—with 99% accuracy—when a woman will ovulate, to lure people into making purchases. This is shown by the following representative statements included on Defendants' packaging:

| Brand | Statement on Front Package | Accuracy Promise |
|---|---|---|
| Clearblue | "Easy Ovulation Kit 2 Identify your **Most Fertile Days**" | "99% accurate"[2] |
| | | |
| First Response | "FIRST RESPONSE OVLUATION, FERTILE WINDOW OVULATION TEST, PREDICTS YOUR 2 MOST **FERTILE DAYS**," | OVER 99% ACCURATE."[3] |
| | | |
| Target | "**early ovulation test**, tells you the best 2 days to conceive . . . results in as early as 3 minutes..." | "99% accurate"[4] |
| | | |

---

[1]   As of 2015, an estimated 7.3 million women had received some form of infertility service. *See* A47 ¶ 64, citing https://www.cdc.gov/nchs/nsfg/key_statistics/i.htm#infertilityservices.

[2]   *See* A39-40 ¶ 47.

[3]   A40-41 ¶ 50.

[4]   A42 ¶ 53.

| Walgreens | "DIGITAL **Ovulation Predictor** . . . Helps identify your most fertile days" | "**OVER 99% ACCURATE**"[5] |
|---|---|---|
| | | |
| CVS | "One Step **Ovulation Test**" | "**OVER 99% ACCURATE**"[6] |

Defendants' promises, however, are not true. The Kits do not test for ovulation. A48-50 ¶¶ 67-71. The Kits detect only whether there has been a spike in a person's luteinizing hormone ("LH") level. A48-49 ¶ 67. Though a spike in LH levels *might* be indicative that ovulation will occur in the near future, it also can be indicative of changes occurring throughout a woman's menstrual cycle and health conditions unrelated to ovulation. A49-50 ¶¶ 68-71. Thus, the Kits do not identify with 99% accuracy if a person is, or soon will be, ovulating and are not necessarily indicative of a woman's fertility status or a woman's likelihood of becoming pregnant at a certain time. *Id*.

Defendants' strategy of making false promises has been extremely successful. Millions of consumers purchased the Kits under the false notion that they would identify ovulation with 99% accuracy, resulting in huge profits for Defendants. Every year, Church & Dwight makes more than $5,000,000 in profits from sales of the Kits. *See* A41 ¶ 51. So does Target, SPD, and Walmart. A40, A42-43, A45 ¶¶ 48, 54, 60.

---

[5]    A43 ¶ 55.
[6]    A44 ¶ 57.

Plaintiffs—residents of California and New York, seeking to represent classes of California and New York purchasers—are among these millions of deceived customers. Each of the Plaintiffs purchased the Kits reasonably expecting that they would test, with over 99% accuracy, whether they would ovulate in the next 24-48 hours, and not merely whether they were having an LH surge that may or may not be connected to ovulation. A29-37 ¶¶ 8-38. As a result of Defendants' deceptive packaging, Plaintiffs were overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket losses. *Id.*

## B. Procedural History

On September 12, 2022, Plaintiffs La Rosa and Caneda filed a complaint for deceptive advertising under New York law against Defendants, with the exception of Walmart. ECF No. 1.[7] Also on September 12, 2022, Plaintiffs Dave, Bergum, DePol, Johnigan, and McKay sued Defendants, exclusive of Walmart, in the Northern District of California for deceptive business practices under California law. *See Dave, et al v. Abbott Labs., et al.,* No. 3:22-CV-5191 (JSC), ECF No. 1 (N.D. Cal. 2022). The California parties jointly moved to transfer their action to the Eastern District of New York. ECF No. 29. On January 25, 2023, Plaintiffs La Rosa and Caneda filed an unopposed motion to consolidate the actions, which the District Court granted. ECF Nos. 61-62. On February 7, 2023, Plaintiffs filed a consolidated

---

[7] Citations to "ECF No." refer to entries on the District Court's docket.

8

amended class action complaint against Defendants.  ECF No. 63.

On March 14, 2023, Walmart sought to sever the claims against it and transfer venue to the Southern District of California due to lack of personal jurisdiction.  ECF No. 68.  Plaintiffs did not oppose Walmart's request (ECF No. 69), and, on April 26, 2024, the District Court subsequently granted the motion, severing and transferring the claims against Walmart to the Southern District of California.  On March 24, 2023, Defendants, except Walmart, sought to move to dismiss the Complaint.  ECF No. 81.  Without ruling on the merits of the request to dismiss, on April 26, 2023, the District Court granted Plaintiffs leave to "file an amended complaint, if they believe one is necessary . . . ."  In the meantime, on March 24, 2023, Plaintiffs dismissed the action against defendants Abbott Laboratories, Alere Inc., and Procter & Gamble Manufacturing Company, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).3.  ECF No. 76.

On May 10, 2023, Plaintiffs filed their Second Amended Complaint against Defendants in the District Court, which necessarily did not name Walmart as a defendant.  ECF No. 85.  On June 8, 2023, despite previously objecting to jurisdiction, Walmart consented to personal jurisdiction in the District Court.  ECF No. 88.  Plaintiffs subsequently sought to amend the complaint in order to consolidate Plaintiff Morales' claims against Walmart with the existing identical claims pending in the District Court against the other Defendants and to allege

Plaintiff Tipling's claims against Walmart under New York law. ECF No. 89. Plaintiffs' Third Amended Complaint (referred to herein as the "Complaint") was filed on August 7, 2023. A27-63.

On September 8, 2023, Defendants moved to dismiss the Complaint (the "Motion") (A66, A70), which Plaintiffs opposed (A133), and to which Defendants replied (A173).

On December 7, 2023, this action was reassigned from District Judge Nina R. Morrison to District Court Judge Ramon E. Reyes, Jr. *See* A23.

**C. The District Court's Order**

Without hearing oral argument on the Motion, on May 7, 2024 the District Court issued a Memorandum and Order granting the Motion without leave to amend. A196-214. In its Order, the District Court held that the Complaint failed to state a claim under New York and California's deceptive advertising statutes because a reasonable consumer purportedly would not be misled by Defendants' packaging. A207-212. The District Court reasoned that a "reasonable consumer" in this instance would likely exhibit a higher standard of care and, as a result, would somehow know that the FDA has issued statements indicating that tests that reveal actual ovulation do not exist. A208. Reviewing a cherry-picked sampling of the Kits' packaging, the District Court further found that a reasonable consumer would review the sides and backs of the packaging and would see language purportedly clarifying that the Kits

10

test for LH, not ovulation itself. A209. The District Court contrasted the Kits with a "basic food item," for which a consumer "is not expected to flip over the packaging to look for clarification or disclaimers." *Id*.

The District Court also dismissed the New York Plaintiffs' claim for unjust enrichment on the ground that it is "duplicative of the claims under the New York consumer protection laws." A212-213.

Finally, the District Court denied Plaintiffs leave to amend the Complaint, reasoning that where the "claims are dismissed on substantive grounds, leave to amend is denied as futile because the 'substantive problem [cannot] be cured through better pleading.'" A213 (quoting *Morales v. New York City Dep't of Educ.*, 808 F. App'x 35, 28 (2d Cir. 2020)).

## V.   SUMMARY OF ARGUMENT

In ruling on Defendants' Motion, the District Court repeatedly disregarded both the substantive law that applies to consumer protection actions under New York and California law and the applicable standards that govern motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under applicable precedent, the Complaint sufficiently alleges that Defendants' representations of the products as "ovulation tests" and as being "99% Accurate" at predicting ovulation, viewed in context and in their entirety, would lead a reasonable consumer acting reasonably under the circumstances to believe that the products indicate when a person will

11

ovulate and do so with 99% accuracy, and that the products are indicative of a person's fertility status, ovulation, and/or the likelihood of getting pregnant at a certain time.

Instead of considering Defendants' representations in their entirety and in context, the District Court parsed selected excerpts of the packaging, including from the sides and backs of the packaging, and determined that Defendants' representations were not misleading based on its own interpretations.

Further, the District Court, applying its own novel standard, surmised that reasonable purchasers of at-home urine ovulation tests are women trying to get pregnant that "have had trouble getting pregnant in the past" and, accordingly, are expected to "exhibit a higher degree of care" and should be "informed" enough to know that it is apparently "impossible to test for actual ovulation." A209. Thus, instead of taking Plaintiffs' well-pled allegations as true and drawing all reasonable inferences in Plaintiffs' favor, as it was required to do in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the District Court substituted its own scientific opinion that it is "impossible to test for actual ovulation" as fact based on the District Court's interpretation of a statement on the FDA website (viewed alone and not in context).

If adopted, the District Court's approach, which would require consumers of at-home tests to conduct independent pre-purchase research on the FDA website and

be able to discern from information on the FDA website the scientific and technological limitations of such products, would render the reasonable consumer standard utterly meaningless and would only serve to encourage companies to engage in deceptive advertising. Numerous courts have rejected similar attempts to put the onus on consumers to engage in exhaustive efforts to try to figure out whether a company's claims are false and misleading, and this Court should do the same. *See, e.g., Hernandez v. Radio Sys. Corp.*, No. EDCV 22-1861 JGB (KKx), 2023 WL 4291829, at *8 (C.D. Cal. May 10, 2023) (rejecting "the notion that (1) as an empirical matter, reasonable consumers engage in exhaustive research before purchasing items or (2) that the reasonable consumer standard *should* require purchasers" to do so) (emphasis in original); *Dorris v. Danone Waters of Am.*, No. 22 Civ. 8717 (NSR), 2024 WL 112843, at *7 (S.D.N.Y. Jan. 10, 2024) (reasonable consumers could not be expected to conduct online research in order "to fully understand the meaning of 'carbon neutral'").

The Complaint also sufficiently pleads the other essential elements of Plaintiffs' claims, including reliance and injury, and the District Court did not hold otherwise. Moreover, the New York Plaintiffs have standing to seek injunctive relief because the Complaint alleges that, absent such relief, they are likely to be harmed again in the future.

13

In addition, the District Court erred in dismissing the New York Plaintiffs' unjust enrichment claim as duplicative of Plaintiffs' New York consumer protection claims. Given that the claims require proof of different elements and seek different remedies, it was improper and premature to dismiss the claim as duplicative.

Finally, the District Court abused its discretion by dismissing the Complaint without leave to amend. The District Court violated the "permissive standard" of Rule 15 of the Federal Rules of Civil Procedure, which mandates that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). It has been the sound policy of this Circuit that leave to amend should be granted especially where, as here, Plaintiffs' consumer protection claims are subject to Rule 9(b) pleading standards and Plaintiffs have not had an opportunity to re-plead with greater specificity. *Id.*; *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986). Accordingly, at the very least, this case should be remanded for Plaintiffs to remedy any identified deficiencies under Rule 9(b) or Rule 12(b)(6).

## VI. ARGUMENT

### A. Standard of Review

This Court reviews the granting of a motion to dismiss on the pleadings *de novo*, accepting the complaint's factual allegations as true, and drawing all inferences in favor of the plaintiff. *See Operating Local 649 Annuity Trust Fund v.*

14

*Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010); *Karedes v. Ackerley Grp., Inc*., 423 F.3d 107, 113 (2d Cir. 2005). A motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Moreover, plausibility does not require probability. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Because the ultimate question of whether a retail product label is misleading to a reasonable consumer is one for the factfinder, courts are properly skeptical of motions to dismiss such cases on the pleadings. Dismissal is *only* appropriate where "the [packaging] itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008) (emphasis added). Such situations are "rare" exceptions to the general rule that determining whether a product is misleading to a reasonable consumer is more appropriately left to the factfinder. *See Segedie v. Hain Celestial Grp., Inc*., No. 14 Civ. 5029 (NSR), 2015 WL 2168374, at *10 (S.D.N.Y. May 7,

15

2015) (only in "rare situations" may a court determine, as a matter of law, that the alleged violations of consumer protection laws are "simply not plausible").

### B. Plaintiffs Stated Claims For Violations Of New York And California Consumer Protection Laws.

To state a claim for violations of the CLRA (Cal. Civ. Code § 1770, *et seq.*) a plaintiff must allege: "(1) a misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that misrepresentation." *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014). To state a claim under the UCL (Cal. Bus. & Prof. Code § 17200, *et seq.*), a plaintiff is required to show that, due to a defendant's conduct, (1) "members of the public are likely to be deceived" and (2) plaintiffs "suffered injury in fact and has lost money or property as a result." *Id.* at 921-22.

To state a claim for violations of GBL §§ 349 and 350, a plaintiff must allege that a defendant engaged in: (1) consumer-oriented conduct, that was (2) materially misleading, and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

The District Court made no findings in the proceedings below as to whether Plaintiffs sufficiently pled the elements of their consumer protection claims other than with the respect to the element of materially misleading conduct. A204-212. As to the element of materially misleading conduct, and all other required elements, Plaintiffs' allegations were sufficient to state a plausible claim for relief against Defendants.

16

**1. The District Court Erred As A Matter Of Law In Finding That No Reasonable Consumer Could Be Misled By Defendants' Representations.**

To allege that a defendant made materially misleading representations in violation of New York and California consumer protection laws, a plaintiff need only "plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (internal quotation omitted). "[T]his inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage[.]" *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

Only in "rare situations"—such as when "a plaintiff's claims as to the impressions that a reasonable consumer might draw are patently implausible or unrealistic[]"—may a district court appropriately determine that a statement is not deceptive as a matter of law. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Montera v. Premier Nutrition Corp.*, Nos. 22-16375, 22-16622, 2024 WL 3659589, at *4 (9th Cir. 2024). For the reasons set forth below, this case is not one of these "rare situations." *See id.*

> *a. The District Court Failed To Consider Defendants' Representations As A Whole And In Context.*

Although the District Court correctly noted that, in determining whether a reasonable consumer would have been misled by an advertisement, a court must consider the challenged advertisement in context and as a whole (A207), "the court

17

misapplied that principle to Plaintiffs' claims in this case." *See Mantikas,* 910 F.3d at 637.  The crux of Plaintiffs' allegations is that Defendants' representations about the accuracy of the Kits, the references to the products as "ovulation tests," and other accompanying statements and images on the packaging are misleading because they communicate to a reasonable consumer that the products will indicate when a person will ovulate, and will do so with 99% (or greater) accuracy, and that test results are indicative of a person's fertility status, ovulation, and/or the likelihood of getting pregnant at a certain time.  Contrary to the reasonable expectations communicated by the front packaging, however, the products merely test whether a person has a surge of luteinizing hormone, which can occur for a variety of reasons in people of both sexes and which may or may not be indicative of ovulation, fertility status, and/or the likelihood of becoming pregnant at any time.

The District Court improperly cabined Plaintiffs' allegations as follows: "when read together, 'ovulation test' and '99% accurate' lead an objectively reasonable person to the understanding that the kits test for whether a person is ovulating with 99% accuracy."  A207-208.  This overly narrow characterization of Plaintiffs' allegations failed to consider the entirety and full context of Defendants' advertisements.  Defendants, as alleged in the Complaint, made numerous additional representations in conjunction with their references to the phrase "ovulation test" and their claims regarding accuracy.  *See* A39-45 ¶¶ 47, 50, 53, 55, 57, 59.  For

example, on one product, the statement "GET PREGNANT SOONER!" appears above the product's name—the "FERTILE WINDOW OVULATION TEST" (A41 ¶ 50). Some products even included images of babies on the front packaging. A39-41 ¶¶ 47, 50.[8] The District Court was required to consider Defendants' accuracy claims and their references to the products as "ovulation tests" along with these other numerous representations. Viewed in the context of the packaging as a whole, at a minimum Defendants' representations could not be deemed "so obviously unimportant that the jury could not reasonably find that a reasonable [person] would not have been influenced by [them]." *See Friedman v. AARP, Inc.,* 855 F.3d 1047, 1056 (9th Cir. 2017); *Williams,* 552 F.3d at 939 n.3 (acknowledging that while the statement "nutritious" standing alone may not be misleading, dismissal was inappropriate because "this statement certainly contributes . . . to the deceptive context of the packaging of a whole[,]" for a product called "fruit juice snacks" and which included pictures of various fruits).

Further, the District Court erroneously found that "language on the side or back of the packaging" purportedly "clarif[ied] that the products test for LH, not for

---

[8] The District Court acknowledged that "some products include phrases on the front like, 'Predicts Your 2 Most Fertile Days" and "tells you the best 2 days to conceive[,]" but declined to consider whether such phrases viewed together and in context with Defendants' other front packaging representations were materially false and misleading, limiting its analysis solely to whether the terms "ovulation test" and "99% accurate" were materially misleading. A207, A210.

ovulation itself, and that an LH surge typically precedes ovulation[,]" rendering Plaintiffs' allegations of deception implausible. A209, A211. First, reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from . . . small print on the side [or back] of the box." *See Williams*, 552 F.3d at 939 (ingredient list on side of box which did not list as ingredients the fruits depicted on the front of the packaging failed to "provide a shield for liability for the deception"). Thus, the sides and backs of the packaging of Defendants' products should be irrelevant to the District Court's inquiry of whether the front packaging was deceptive.

Second, the sides and backs of the packaging do not "clarify" the front packaging representations in the manner described by the District Court. Nowhere on the backs or sides of Defendants' packaging does it state that the products "test for LH, not ovulation itself." Whether a reasonable consumer would interpret the backs and sides of the packaging in the same way as the District Court cannot be resolved on a motion to dismiss.[9] *See Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992) ("It is

---

[9] The District Court did not explain how it reached its interpretation of the back and side packaging statements, which included statements such as: (1) "The Test detects a hormonal surge (LH) in your urine, which occurs prior to ovulation. Make love at any time in the next 48 hours to maximize your chances of becoming pregnant naturally[,]" (A109) and (2) "Your two most fertile days begin with the LH surge" (without any indication of what "LH" stands for) (A113).

not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive. Rather . . . [t]he question in such cases is . . . [W]hat does the [public perceive] to be the message?").

> b. *The District Court Erroneously Applied A Heightened Reasonable Consumer Standard, Which, If Adopted, Would Render The Reasonable Consumer Test Meaningless.*

The reasonable consumer standard requires a plaintiff to allege "more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Whiteside v. Kimberly Clark Corp.,* 108 F.4th 771, 777 (9th Cir. 2024). There is no brightline test, but a plaintiff must plausibly allege "that the packaging will deceive many consumers, not just that a few might be deceived." *Id.* A reasonable consumer is not expected to be "versed in the art of inspecting and judging a product, in the process of its preparation or manufacture[.]" *Hernandez,* 2023 WL 4291829, at *8 (recognizing that reasonable consumers would not have "read the totality of [defendant]'s website and the manuals for the [products]" before purchase).

The District Court found that Defendants' Kits "are a specialty item targeted to an informed class of consumers" and, as such, reasonable consumers of the Kits "are undoubtedly more likely to exhibit a higher standard of care" than consumers of "low-priced, everyday items[.]" A208-209. Under this unprecedented heightened standard of care, the District Court found that a reasonable consumer of Defendants'

21

Kits would know that it is "impossible to test for actual ovulation" and, thus, could not reasonably be misled by Defendants' representations. A208. The District Court's holding was flawed for several reasons.

The District Court based its determination that "it is impossible to test for actual ovulation" on its interpretation of an FDA statement that at-home urine ovulation tests "can detect LH and E3G reliably about 9 times out of 10." A208.[10] It is undisputed that Defendants' product packaging does not reference or even allude to the FDA, let alone mention the FDA statement upon which the District Court relied. Accordingly, under the District Court's reasoning, a reasonable consumer of an over-the-counter at-home test is expected to conduct independent research about the product, conduct such research specifically on the FDA's website,

---

[10] The District Court appeared to believe that FDA Guidance provided this statement about at-home urine ovulation tests (*e.g.,* A208 n.8). FDA Guidance documents provide information for drug makers seeking FDA approval of a new drug, and represent the Agency's "current thinking" about what parameters must be met in order to gain approval. *See* https://www.fda.gov/about-fda/reports/background-fda-good-guidance-practices#:~:text=FDA%20guidance%20documents%20explain%20the,own%20staff%2C%20and%20the%20public.

The FDA statement cited by the District Court (available at: https://www.fda.gov/medical-devices/home-use-tests/ovulation-urine-test), is not taken from an FDA Guidance document, but rather is provided in an informational section of the FDA website titled "Home Use Tests," which provides general information in a question and answer format about various types of over-the-counter tests, including an "Ovulation (Saliva Test)."

and then must be able to discern based on the FDA's statements whether or not it is even possible that the condition which the product purports to be able to test can actually be tested. Courts have repeatedly rejected such an approach as unreasonably burdensome. *See, e.g., Hernandez,* 2023 WL 4291829, at *8 (rejecting "the notion that (1) as an empirical matter, reasonable consumers engage in exhaustive research before purchasing items or (2) that the reasonable consumer standard *should* require purchasers" to do this and citing cases); *Dorris,* 2024 WL 112843, at *7 (defendant's "carbon neutral" claim was misleading despite inclusion of link on label directing consumers to "learn more" about defendant's carbon neutral claim, noting that it would "expect[] too much from consumers" to conduct online research "to fully understand the meaning of 'carbon neutral'").

Even accepting the District Court's premise that, according to the FDA, it is "impossible to test for actual ovulation," it was improper for the District Court to determine as a matter of law that a reasonable consumer of Defendants' products would or should know that information without making *any* factual findings about how easily a reasonable consumer could find this FDA information, how easily a reasonable consumer could interpret such information, or what a reasonable consumer understands about the scientific and technological capabilities of at-home tests. *See Yu v. Dreyer's Grand Ice Cream, Inc.,* 592 F. Supp. 3d 146, 156 (S.D.N.Y. 2022) (absent evidence that reasonable consumers are "aware" of FDA regulations

23

or that "consumers incorporate such regulations into their marketplace expectations," FDA regulations "are insufficient to establish that a reasonable consumer is likely to be misled" and citing cases).

Further, the District Court erroneously relied on *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), to support its proffered novel "higher standard of care." In *Moore,* plaintiffs alleged that they were misled by the statement "100% New Zealand Manuka Honey" to believe that a far greater percentage than 65% of the honey came from Manuka flower nectar (the plaintiffs learned by way of their own independent testing that the honey was less than 65% derived from Manuka flower nectar). *Id.* at 884. The Ninth Circuit found that reasonable consumers, especially of such a specialty honey variety, would not have been misled by defendant's representations, as reasonable consumers "generally know that it is impossible to exercise complete control over where bees forage," and, as such, "it is impossible for bees to produce honey that is 100% derived from the Manuka flower." *See id.* at 883. While the *Moore* court stated that reasonable consumers of "niche, specialty products" "would likely know more than most about the production of the product," the court ultimately concluded that "a consumer of any level of sophistication could not reasonably interpret" the label as the plaintiffs alleged. *See id*.

The District Court thus took *Moore* too far. *Moore* did not hold that reasonable consumers, even of "niche, specialty products"—if the Kits could even

24

be described as such[11]—should be expected to conduct extrinsic research about how a product is made, let alone possess the acumen to understand what is medically or technologically achievable. The Ninth Circuit's recent decision in *Whiteside v. Kimberly Clark Corp.*, which is far more similar to the instant case than *Moore,* further undercuts the District Court's interpretation of *Moore.* In *Whiteside,* the Ninth Circuit rejected defendant's contention that reasonable consumers of defendant's baby wipes would not be misled by statements such as that the wipes were "plant-based," to believe that the wipes did not contain synthetic ingredients, and would know from reading the back label that the wipes contained synthetic ingredients. *See* 108 F.4th at 782.

The *Whiteside* court noted that unlike in *Moore,* which concerned knowledge of bees which would be "familiar to anyone who has encountered vegetation, most people likely have not contemplated how baby wipes are made." 108 F.4th at 783. In *Whiteside,* the court further noted it was unpersuaded by "[d]efendant's contention that 'reasonable consumers understand that baby wipes don't grow on trees. Reasonable consumers also understand that meat does not grow on trees, yet

---

[11] The District Court did not articulate how it defined a "niche, specialty product." Nor did the District Court explain why it believed Defendants' Kits would fall within this undefined category of products and on what basis. The District Court's conclusory determination that Defendants' Kits constitute a "niche, specialty product" subject to a different level of scrutiny finds no support in precedent and would upend well-established principles regarding the interpretation of the reasonable consumer standard.

25

technology has advanced such that plant-based meat is now available. Consumers could reasonably suppose that manufacturers have similarly devised a way to make baby wipes using only plant-based compounds." *Id*.

To adopt the District Court's holding would mean that reasonable consumers of at-home urine ovulation tests are expected to know more about the mechanics of fertility testing and ovulation than a reasonable consumer of baby wipes, which would not make much sense. Indeed, a great deal of baby wipe purchasers have likely had a baby (and likely had a baby somewhat recently), and, as such, would likely have the same level and possibly even a greater amount of knowledge about fertility, pregnancy, and ovulation-related issues than a reasonable consumer of an at-home urine ovulation test. Similar to *Whiteside,* here, a reasonable consumer of Defendants' Kits would not know, based on common everyday experience, such as observing bees near "vegetation," *inter alia,* what LH is, what an LH surge signifies, the correlation between an LH surge and ovulation, and whether it is patently impossible to test ovulation. *See id*. at 783. As in *Whiteside,* here, too, a consumer could reasonably suppose that drug and medical device companies have devised a way to test for actual ovulation. *Id.*

As the Ninth Circuit and numerous district courts in this Circuit have done, this Court too should reject the District Court's approach to the reasonable consumer

26

standard, which would place an unreasonable onus on consumers and would only serve to encourage companies to engage in deceptive practices.

> c. *The District Court Erred In Finding That The FDA's Statement Does Not, At A Minimum, Present A Factual Dispute That Cannot Be Resolved On A Motion To Dismiss.*

In the absence of extrinsic evidence that a reasonable consumer is aware of FDA regulations and incorporates those regulations into their day-to-day marketplace expectations—none of which was before the District Court—then whether a defendant's statements conflict or comport with FDA regulations is entirely irrelevant to whether a defendant's statements could mislead a reasonable consumer. *See Yu*, 592 F. Supp. 3d at 155; *Steele v. Wegmans Food Markets, Inc.,* 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("The point here is not conformity with this or that standard (which is left to the authorities to regulate) but whether the marketing presentation was deceptive.").

Accordingly, here, it is irrelevant whether Defendants' statements conflict or comply with the FDA's statement because neither would "eliminate the possibility that reasonable consumers may be misled" by Defendants' packaging. *See Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *12 (E.D.N.Y. Sept. 26, 2016) (where plaintiff alleged statements about product's ability to treat menopause symptoms were misleading because product contained unsafe lead

27

levels, defendant's compliance with FDA lead exposure regulations did not "eliminate the possibility that reasonable consumers may be misled").

Moreover, putting aside the relevance of the FDA's statement (or lack thereof), just as the District Court was required to view Defendants' statements as a whole and in context to determine if they were misleading, the District Court also was required to examine the FDA's statement as a whole and in context in determining whether the FDA's statement rendered Defendants' statements *not* misleading. The District Court, however, failed to engage in this required analysis. Examining the FDA's statement as a whole and in context demonstrates that, at minimum, the question of whether a reasonable consumer would interpret the statement to mean that it is impossible to test for ovulation cannot be resolved on a motion to dismiss. Though the District Court claimed the FDA states that "at-home ovulation urine tests measure LH to detect ovulation" (A208), the FDA webpage cited by the District Court states that while some at-home urine ovulation tests measure LH, others "measure another hormone – estrone-3-glucuronide (E3G)," and that at-home urine ovulation tests "can detect LH and E3G reliably about 9 times out of 10, but you must do the test carefully." And though the District Court claimed that the FDA states it is impossible to test for ovulation, the FDA states on the same webpage cited by the District Court that "[t]he fertility tests your doctor uses are automated, and they may give more consistent results. Your doctor may use other tests that are not

28

yet available for home use." These statements tend to undercut the inference that it is patently "impossible" to test for ovulation.

Further, the FDA's statement about the accuracy of at-home urine ovulation tests does not comport with Defendants' representations about the same. If, as the FDA states, at-home urine ovulation tests can detect an LH surge accurately about 90% of the time, this information seriously calls into question the legitimacy of Defendants' "99%" and "over 99%" accuracy claims, and demonstrates that the FDA's statement at least raises a factual question about the truth of Defendants' statements which cannot be resolved without additional evidence. *See Sitt,* 2016 WL 5372794, at *10 ("Factual disputes about whether the studies actually prove that [the product] is ineffective . . . cannot be resolved by the Court on a motion to dismiss.").

The District Court acknowledged the discrepancy between the FDA's and Defendants' statements about at-home urine ovulation tests' accuracy but found that it did not present a factual dispute, apparently drawing a distinction between the FDA's statement as referring to "testing for ovulation" and Defendants' statements as referring to "testing for LH." A208-209. The District Court's point highlights why this case is not one of the "rare" cases where it can be determined, as a matter of law, that Defendant's representations would not mislead a reasonable consumer. *See Williams,* 552 F.3d at 939. Indeed, the District Court's point shows that even *it* interpreted references to "ovulation" and "LH" in different and conflicting ways,

given that the District Court interpreted the FDA's statement as explaining that the tests "measure LH" (A208) at one point and "testing for ovulation" at another (A208 n.8). *See Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 452-53 (S.D.N.Y. 2022) (whether a representation is misleading is a factual inquiry and "[w]here a representation is capable of two possible reasonable interpretations, the Court is not free to reject the misleading one . . . simply because there is an alternative, non-misleading interpretation.") (internal quotation marks omitted).

### 2. Plaintiffs Sufficiently Alleged Reliance.

A plaintiff is not required to prove reliance to establish a claim under GBL §§ 349 and 350 (*see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y. 2d 20, 26 (1995)). While reliance is an element of Plaintiffs' claims under California's CLRA and UCL, Defendants effectively conceded below that this element was sufficiently alleged, and the District Court did not hold otherwise.

Under the CLRA and UCL, "[t]o allege reliance, a plaintiff 'only need establish it to be plausible that a reasonable man would attach importance to the existence or nonexistence of the misrepresentation in determining his choice of action in the transaction in question.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020) (quoting *Friedman*, 855 F.3d at 1055) (internal quotations omitted); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) ("a plaintiff is not required to allege that those challenged misrepresentations were the sole or

even the decisive cause of the injury-producing conduct."). "Moreover, a presumption or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material." *Tobacco II*, 46 Cal. 4th at 327. In *Moore,* the Ninth Circuit found that reliance was satisfied where "it certainly seems plausible that a reasonable consumer would at least partially rely on the prescription labeling to pay more money for a certain type of pet food over others," noting that "[a]s the California Supreme Court has emphasized, 'labels matter.'" 966 F.3d at 1021. As further explained by the Ninth Circuit in *Friedman,* a misrepresentation would have to be "obviously unimportant" to defeat a claim at the pleading stage based on this element. 855 F.3d at 1056.

As alleged in the Complaint, the California Plaintiffs relied on Defendants' representations by purchasing the Kits, "reasonably expect[ing] that these products would test, with over 99% accuracy, whether [they] would ovulate in the next 24-36 hours, and not merely whether [they were] having an LH surge that may or may not be connected to ovulation." A30-38, A48-50 ¶¶ 9-13, 15-16, 18, 21, 23, 25, 27, 29-32, 34, 36, 38, 46, 67-71. It is inconceivable that women hoping to become pregnant would not "attach importance" to the timing of ovulation, let alone to misstatements about such timing that could derail successful fertilization. Thus, this element of the CLRA and UCL claims is satisfied.

### 3. Plaintiffs Sufficiently Alleged That They Suffered Injury.

Under the CLRA, "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action." *See* Cal. Civ. Code § 1780. The California Supreme Court has interpreted the CLRA's "any damage" requirement broadly, concluding that the "phrase . . . is not synonymous with 'actual damages,' which generally refers to pecuniary damages." *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 724 (2018) (quoting *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009)). "Rather, the consumer must merely 'experience some kind of damage,' or 'some type of increased costs' as a result of the allegedly unlawful practice." *Id.* Private plaintiffs under the UCL have standing to sue if they have "suffered injury in fact" and "lost money or property as a result of" the business practice they challenge as unlawful or unfair. *See* Cal. Bus. & Prof. Code § 17204. Courts often concurrently address injury under the CLRA and injury under the UCL because these standing requirements are "effectively identical." *Hansen,* 25 Cal. App. at 724 (citing *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916 (2016)).

The injury requirements of California's consumer protection statutes are satisfied by the Complaint, which alleges that Plaintiffs paid for Defendants' Kits in reliance on false representations that the Kits were, among other things, over 99%

accurate at predicting ovulation. Plaintiffs, as a result, were "overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket losses." *See* A32-37, A58-60 ¶¶ 20-39, 110, 117, 121. Had Plaintiffs been told the truth—*i.e.*, that Defendants' Kits do not, in fact, test for ovulation and do not, in fact, predict ovulation with 99% accuracy—Plaintiffs would have chosen to not buy the products at all, to buy the products less often, or to not pay as much for the products.

As explained by the California Supreme Court, "[f]or each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent." *Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310, 329-30 (2011). "The UCL and false advertising law are both intended to preserve fair competition and protect consumers from market distortions. . . . Contrary to that general purpose, if we were to deny standing to consumers who have been deceived by label misrepresentations in making purchases, we would impair the ability of consumers to rely on labels, place those businesses that do not engage in misrepresentations at a competitive disadvantage, and encourage the

33

marketplace to dispense with accuracy in favor of deceit." *Id*. at 331 (internal citations omitted).

Similarly, under GBL §§ 349 and 350, a plaintiff need only allege that she "has been injured by reason" of the alleged deceptive or misleading practice impacting consumers. *Oswego Laborers' Local 214 Pension Fund,* 85 N.Y. 2d at 25; *see also Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 470 (E.D.N.Y. Sept. 25, 2008). The Second Circuit has emphasized that the threshold for pleading injury to support such a claim is "low." *Winans v. Ornua Foods N. Am. Inc.*, No. 2:23-CV-01198-FB-RML, 2024 WL 1741079, *2 (E.D.N.Y. Apr. 23, 2024) (citing *John v. Whole Foods Mkt. Grp., Inc*., 858 F.3d 732, 736 (2d Cir. 2017)). This requirement is satisfied where a plaintiff alleges that she did not receive the full value of her purchase, by alleging, for example, that she paid a price premium due to the deception. Indeed, as courts have explained, "in the Second Circuit, an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong . . . ." *Onaka v. Shiseido Americas Corp*., No. 21-CV-10665-PAC, 2023 WL 2663877, at *3 (S.D.N.Y. Mar. 28, 2023) (citing *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021)); *Belfiore v. Procter & Gamble Co*., 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) ("Courts have construed the payment of a premium price to be an injury in and of itself.") (citing *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274,

288 (S.D.N.Y. 2014) (all consumers are harmed for purposes of Section 349 in the amount of the purchase price of a misrepresented product or in the amount of the premium paid for the product)); *Rodriguez v. It's Just Lunch, Int'l*, 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010) (premium price paid based on misrepresentations is injury under Section 349).

As explained above, this is precisely the injury alleged by Plaintiffs in the Complaint. Plaintiffs allege that, as a result of Defendants' deceptive packaging, Plaintiffs were "overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket losses." *See* A30-37 ¶¶ 9-38. Nothing more is required to plead sufficient injury to state a claim under GBL §§ 349 and 350.

It is expected that Defendants will argue, as they did before the District Court, that injury is not sufficiently alleged here because Plaintiffs do not dispute that the products functioned as advertised. To the contrary, Plaintiffs allege in the Complaint that Defendants' Kits do not function as advertised. A48-50 ¶¶ 67-71. Defendants' Kits are advertised as testing for ovulation and with 99% (or greater) accuracy. But, as Defendants acknowledged below, the tests do neither. The products instead test for an LH surge, which is materially different from predicting ovulation. Therefore, the products did not, as Defendants have suggested, live up to Plaintiffs' expectations. As courts construing *Kwikset* have stated: "[A] consumer's subjective willingness to pay more for the product than he or she would have been willing to

35

pay in the absence of the misrepresentation is itself a form of economic injury 'whether or not a court might objectively view the products as functionally equivalent.'" *Hansen,* 25 Cal. App. 5th at 729 (quoting *Kwikset*, 51 Cal. 4th at 330-31).

Nor must the Complaint include the specific price paid by Plaintiffs for the Kits alongside the price charged for competitors' products, as Defendants argued to the District Court. "Numerous courts in this Circuit have 'found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations.' As the court in *Rodriguez* noted, 'defendant's contention that a plaintiff must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory . . . contradicts the weight of the law in this Circuit.'" *Colpitts*, 527 F. Supp. 3d at 578 (quoting *Rodriguez v. Hanesbrands Inc*., No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018) (collecting cases), report and recommendation adopted, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018)). *See also Axon v. Florida's Nat. Growers, Inc*., 813 F. App'x 701, 704 (2d Cir. 2020) (stating that the plaintiff's "failure to identify the prices of competing products to establish the premium that she paid 'is not fatal to [the plaintiff's] claim'" at the motion to dismiss stage) (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc*., 8 F. Supp. 3d 467, 481-82 (S.D.N.Y. 2014))); *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80,

94 (S.D.N.Y. 2022) (finding "unavailing at the [motion to dismiss] stage" Peloton's argument that the plaintiffs failed to plead the price they paid for their bikes, how the advertisements affected the price, and how much competitors charge for similar products, stating it "is a reasonable inference from the pleaded facts that the products were subject to a price premium because Peloton's representations . . . resulted in an increased price when that value was not actually there.").

To the extent Defendants intend to argue that a "price premium" theory cannot apply here as a matter of law because the only other purported option for Plaintiffs was a transvaginal ultrasound, this argument should also be rejected. The issue in this case is whether Plaintiffs should have been able to make an informed decision about whether to buy Defendants' Kits for the prices being charged based on accurate packaging. The answer to that question is an unequivocal "yes." The fact that viable alternatives may not exist in the marketplace does not undermine the allegation that Plaintiffs paid for, or paid more for, the Kits than they otherwise would have paid. A marketplace monopoly does not give Defendants carte blanche to engage in consumer fraud.

For these reasons, the Complaint sufficiently pleads the injury element necessary to state a claim and under both New York and California law.

**C. Plaintiffs Have Standing To Seek Injunctive Relief.**

Plaintiffs' request in the Complaint for injunctive relief was proper. Although this issue was not addressed by the District Court in its Order and was not a basis for the dismissal of the Complaint, Defendants raised this issue below, and Plaintiffs expect Defendants may raise it again here. Defendants argued below that a consumer lacks standing to seek an injunction based on prior deceit, but numerous courts have rejected this argument.

Under Article III standing rules, "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111-12 (1983)). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief *unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way*." *Nicosia*, 834 F.3d at 239 (emphasis added). Numerous courts, including several in this Circuit, have concluded that plaintiffs have standing to seek prospective injunctive relief when they allege that they intend to purchase a product in the future, including if it is altered, as Plaintiffs allege in this case. *See, e.g., DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 224 (N.D.N.Y. 2023) (standing requirement met where defendant continued to sell the skin care products at issue and the plaintiffs' declarations stated they would purchase products

38

again if safe for use or relabeled); *Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401 (NSR), 2020 WL 2766050, at *5 (S.D.N.Y. May 27, 2020) (plaintiff had standing to seek injunctive relief where she alleged she would buy the product at issue again "if she were assured that any purported defects were identified and eliminated"); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337-38 (E.D.N.Y. 2018) (plaintiffs have standing if they plead a future desire to buy defendant's product); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) ("[A] Plaintiff certainly has standing when they, as is the case here, assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled.").

The Second Circuit's opinion in *Nicosia*, 834 F.3d at 239, upon which Defendants relied in the proceedings below, is not inconsistent with the many authorities cited above. In *Nicosia*, the plaintiff brought a putative class action against Amazon after purchasing weight loss products that contained a controlled substance that had been removed from the market and sought, among other things, an injunction preventing Amazon from selling other products containing the substance. The district court concluded that the plaintiff lacked standing to seek an injunction because he could not establish that he was in danger of being wronged again, and the Second Circuit affirmed that conclusion. *Id.* at 238. Critical to the Second Circuit's reasoning was that Amazon "ha[d] ceased selling [the offending

39

product] on its website," and that plaintiff "ha[d] failed to allege he intend[ed] to use Amazon in the future to buy *any* products." *Id*. at 239 (emphasis in original). There, the Court distinguished the case before it from cases in which plaintiffs allege actual future exposure to an increased risk of future injury. *Id*. (citing *Baur v. Veneman,* 352 F.3d 625 (2d Cir. 2003) and *LaFleur v. Whitman,* 300 F.3d 256 (2d Cir. 2002)).

Here, in contrast, Defendants continued to sell the materially misleading Kits and the Complaint expressly alleges that Plaintiffs expect to purchase Defendants' Kits in the future. A30-37 ¶¶ 9-13, 15-16, 18, 21, 23, 25, 27, 29-32, 34, 36, 38. Indeed, as Defendants themselves argued before the District Court, Plaintiffs do not have a suitable home-test alternative to Defendants' Kits—they are a captive base of consumers. Because Plaintiffs have plausibly alleged the threat of future injury based on their stated intent to buy the Kits in the future, Article III standing pleading requirements are satisfied.

The Second Circuit's opinion in *Berni v. Barilla S.p.A*., 964 F.3d 141 (2d Cir. 2020), also is not inconsistent with this result. In *Berni*, the Second Circuit Court of Appeals denied certification of a class of past purchasers of Barilla pasta for purposes of injunctive relief. *Id*. at 149. However, the logic of the *Berni* decision— which related to a motion to certify a class and did not consider whether standing was sufficiently pled on a motion to dismiss—depended on the fact that plaintiffs there attempted to certify an injunctive class based on a complaint that alleged only

40

past harms. Among other things, the *Berni* Court highlighted that certification of an injunctive class under Rule 23(b)(2) requires that the relief be proper for each and every member of the group and that, given the facts, past purchasers of Barilla pasta do not have any sort of "perpetual relationship with the producer" and would be unlikely to purchase the pasta at issue in the future. *Id.* at 147. By contrast, and as explained above, the Complaint here alleges the likelihood of future harm because the Plaintiffs expect to buy Defendants' Kits in the future.

This result is also consistent with decisions from courts in other Circuits. For example, the Ninth Circuit resolved a district court split in deciding that a previously deceived consumer may have standing to seek an injunction. As stated in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id*. at 969-70 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). As more recently explained by a California district court:

> [T]his harm may be demonstrated in two ways: (1) based on 'the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to,' or (2) based on 'the consumer's plausible allegations that she might purchase the product in the future,

despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.'

*Peterson v. Glad Prods. Co.*, No. 23-cv-00491-TSH, 2023 WL 4600404, at *3 (N.D. Cal. Jul. 17, 2023) (quoting *Davidson*, 889 F.3d at 969-70). In *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012), the district court explained the policy rationale of this approach: "were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result." *Id.* at 533. *See also Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1177 (N.D. Cal. Dec. 19, 2022) (plaintiffs "plead specifically what is required by binding Ninth Circuit authority: that they desire to purchase the Products from Defendant in the future but cannot do so in an informed manner because they cannot rely on the labels going forward") (internal quotations omitted); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194 (D.D.C. 2013) (holding past purchasers of hair products had standing to seek injunction because there remained a likelihood of future harm, stating that "[o]nce the veil is lifted on that misrepresentation, however, a consumer might rationally continue to purchase the product for any number of reasons—cost, convenience, brand loyalty, and so on" and will not be "able to rely on the 'salon only' label with any confidence."); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. and Sales Practices*

42

*Litig.*, Case No. 12-md-2320-PB, 2015 WL 7282543, *4 (D.N.H. Nov. 16, 2015) (finding likelihood of future harm to class members despite knowledge of Colgate's misrepresentations regarding soap product).

Because Plaintiffs have plausibly alleged the threat of future injury based on their intent to buy Defendants' Kits in the future, the Complaint's request for injunctive relief satisfies Article III standing requirements. *See Baur*, 352 F.3d at 631 ("[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury.").

### D. The Complaint Sufficiently Alleged The Products At Issue.

Defendants argued to the District Court that they should not be held accountable for their deceptive advertising because the Complaint purportedly fails to allege which specific version of Defendants' "ovulation tests" each Plaintiff purchased. This argument, which notably was not a basis for the District Court's Order, ignores the allegations in the Complaint and is inconsistent with relevant law and, therefore, should be rejected.

The Complaint, in fact, alleges in significant detail the specific facts surrounding each of the Plaintiffs' relevant product purchases, including the brand name of the products purchased by each Plaintiff, the defendant responsible for the marketing and sale of the products purchased by each Plaintiff, the timeframe of each of Plaintiffs' purchases, the retail or online store where the products were

purchased by each Plaintiff, the representations made on the products purchased by each Plaintiff, and photographs of exemplars of the products purchased by each Plaintiff.  *See* A29-37, A39-45 ¶¶ 8-38, 47, 50, 53, 55, 57, 59.  This level of specificity is more than sufficient to put Defendants on notice of the nature of the claims against them and allow Defendants to prepare a defense thereto.

A similar argument was addressed and rejected by a California district court in *John v. AM Retail Group, Inc*., No. 17CV727-JAH (BGS), 2018 WL 1400718 (S.D. Cal. Mar. 20, 2018), where the defendant argued that the putative class action plaintiff failed to specifically identify the wallet at issue that he allegedly purchased from a leather goods store in an action asserting claims under, *inter alia,* the UCL and CLRA.  *Id.* at *7.  The defendant contended that the plaintiff's allegations that he purchased a "black, tri-fold wallet with the words 'WILSONS LEATHER' stamped into the back are insufficient to identify the specific product at issue."  *Id*. In analyzing whether the pleading satisfied Rule 9(b), the court noted that—despite not alleging the specific wallet purchased—the complaint did allege the date the wallet was purchased, the store from where it was purchased, a description of the wallet, and a description of the advertising relied on in making the purchase.  *Id.* This "level of specificity," as explained by the court, was sufficient to state a claim in that it "enables Defendant to 'prepare an adequate answer from the allegations.'" *Id*. (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc*., 806 F.2d 1393,

1400 (9th Cir. 1986)).

Defendants did not below, and cannot now on appeal, explain how minor differences in the various versions of the Kits are cause for dismissal at this stage of the proceedings. They are not. *See Buonasera v. Honest Co., Inc.,* 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) (a plaintiff has class standing if the alleged conduct "implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants.") (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2d Cir. 2012)); *Rojas v. General Mills, Inc.,* No. 12-cv-05099-WHO, 2014 WL 1248017, *9-10 (N.D. Cal. Mar. 26, 2014) (holding that, "[w]ithout deciding issues relevant to class certification," plaintiff could state claims based on the mislabeling of various products, including those not purchased, where it was alleged that all products "contain essentially the same representations" and these representations cause the same harm).

In contrast to the Complaint here, in *Wright v. Publishers Clearing House, Inc*., 439 F. Supp. 3d 102 (E.D.N.Y. 2020), upon which Defendants relied below, the plaintiffs did not identify any aspect of the allegedly purchased products. *Id.* at 116 ("[T]he Amended Complaint identifies neither the purchased products nor material qualities lacking from those products that would permit the Court to infer the payment of a price premium."). Similarly, in *Wilson v. Frito-Lay North America,*

45

*Inc.*, No. 12-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013), the plaintiffs failed "to provide underlying factual details that give Defendants notice" of the claims since, although the plaintiffs "alleged that Defendants made false and misleading statements about a variety of their products," they failed to "provide details about those products." *Id.* at *5. Here, in contrast, Defendants cannot reasonably claim they do not have adequate notice of the products and claims at issue.

**E. The District Court Erred In Finding That The New York Plaintiffs Failed To State A Claim For Unjust Enrichment.**

In their Complaint, the New York Plaintiffs brought a claim for unjust enrichment, alleging that Defendants, through their deceptive and misleading marketing practices, "were enriched, at the expense of the New York Plaintiffs . . . through the payment of the purchase prices for the Defendants' Kits, and . . . revenue from licensing and other sources related to the Defendants' Kits." A55 ¶ 97. The District Court erroneously dismissed this claim on the ground that it is duplicative of the New York Plaintiffs' GBL claims. A213. Given that the claims require different proof and seek different remedies they are, in fact, not duplicative, and dismissal of the unjust enrichment claim was, therefore, in error.

A complaint states a claim "for unjust enrichment when it alleges '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Amusement Indus. Inc. v. Stern*, 693 F. Supp. 2d

327, at 356 (S.D.N.Y. 2010) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). The Complaint here properly alleges, and the District Court did not disagree, each element of an unjust enrichment claim. *See* A55-56 ¶¶ 96-98.

Moreover, an unjust enrichment claim is not duplicative of a GBL claim where "a reasonable trier of fact could find the elements [of] unjust enrichment without establishing all the elements for Plaintiffs' NYGBL [] claim." *Acquard v. Big Heart Pet Brands, Inc.,* No. 19-CV-50-JLS, 2020 WL 12904361, at *7 (W.D.N.Y. Nov. 30, 2020) (internal quotation omitted). Specifically, because an unjust enrichment claim rests on a determination "that equity and good conscience require restitution," the New York Plaintiffs could prevail on this claim even if the District Court were to dismiss or the trier of fact were to ultimately find no liability under the GBL claims (for example, if injury under the GBL ultimately could not be proven).

In *Acquard*, for example, the district court declined to dismiss an unjust enrichment claim where the plaintiffs alleged that defendants falsely and deceptively labeled pet food products as "All Natural" despite that the products contained artificial ingredients, holding that even if a reasonable trier of fact could find the elements of the GBL claims were not met, "the Court could still find that the [Defendant] received a benefit . . . that [ought] to in 'equity and good conscience' be turned over to [Plaintiffs]." *Id.* Many courts have reached the same conclusion. *See, e.g., Winans,* 2024 WL 1741079, at *6 (declining to dismiss unjust enrichment

47

claim against seller of products containing artificial chemicals labeled "pure Irish butter" as duplicative, holding it was possible consumer could lose on claims for deceptive practices and false advertising but prevail on unjust enrichment.); *Warner v. StarKist Co.,* No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019); *Schneider v. Colgate-Palmolive Co.,* 677 F. Supp. 3d 91, 105 (N.D.N.Y. 2023); *Plavin v. Grp. Health Inc.,* 857 Fed. App'x 83, 87 (3d Cir. May 21, 2021) (declining to dismiss unjust enrichment claim as duplicative of GBL claims where plaintiffs alleged defendants were "unjustly enriched by its failure to communicate the Plan's terms, regardless of whether the marketing materials were deceptive.").

The Second Circuit has further stated that claims are duplicative of one another if they "arise from the same facts . . . *and* do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (emphasis added). Here, the New York Plaintiffs seek statutory damages and attorneys' fees for Defendants' GBL violations (A54-55 ¶¶ 86-95) but only restitution with respect to their unjust enrichment claim (A55-56 ¶ 98).

Finally, because the New York Plaintiffs conceivably could obtain relief under their unjust enrichment claim even if the GBL claims fail, pleading in the alternative is permissible at this stage of the proceedings. *See* Fed. R. Civ. P. 8(d)(3); *Mason v. Reed's Inc.,* 515 F. Supp. 3d 135, 147 (S.D.N.Y. 2021) (unjust enrichment not

48

duplicative of Sections 349 and 350 because Rule 8(d)(3) permits a party to state "as many separate claims or defenses as it has"); *Scholder v. Sioux Honey Ass'n Coop.*, No. CV16-5369 (GRB), 2022 WL 125742, at *6 (E.D.N.Y. Jan. 13, 2022) ("although the unjust enrichment claim may ultimately be deemed duplicative of [claims under §§ 349, 350], at this stage of the proceedings, [the] allegations are sufficient").

For all of the foregoing reasons, the District Court erred in finding that the New York Plaintiffs failed to state a claim for unjust enrichment.

## F. The District Court Abused Its Discretion In Denying Plaintiffs Leave To Amend.

As the District Court acknowledged, Plaintiffs requested an opportunity to amend their Complaint in the event the Motion was granted. A213. The District Court abused its discretion in denying this request and dismissing the Complaint with prejudice. A214; *see Loreley*, 797 F.3d at 169 ("We review the district court's denial of leave to amend the complaint for abuse of discretion.").

Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The permissive standard of Rule 15 is consistent with our strong preference for resolving disputes on the merits." *Loreley*, 797 F.3d at 190 (internal quotation marks omitted). The rule in the Second Circuit "has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

49

Here, the District Court overlooked precedent and denied leave on the ground that Plaintiffs had not articulated "how amendment would cure the pleading deficiencies in the complaint." A213. The law, however, does not require a plaintiff to make such a showing. "Generally, we will not deem a request for leave to amend insufficient on the basis of form alone." *Loreley*, 797 F.3d at 190-91 (plaintiff was not required to explain "how the complaint's defects would be cured"; the focus of the leave to amend inquiry is on "notice and futility.").

The District Court further erred in holding that amendment would be futile on the ground the purported pleading defect is a "'substantive problem [that] [cannot] be cured through better pleading.'" A213. This conclusion, offered without any analysis, appears fundamentally rooted in the District Court's erroneous application of the reasonable consumer standard, which, as explained above, itself was in error.

The District Court's dismissal with prejudice constitutes an abuse of discretion and should be reversed.

## VII.  CONCLUSION

For the reasons set forth above, the Judgment of the District Court should be reversed, and the case should be remanded for further proceedings.

Dated: September 19, 2024       Respectfully submitted,

By:  /s/ *Peter A. Binkow*

Peter A. Binkow
Natalie S. Pang
GLANCY PRONGAY & MURRAY
  LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
pbinkow@glancylaw.com
npang@glancylaw.com

Daniella Quitt
GLANCY PRONGAY & MURRAY
  LLP
745 Fifth Avenue, 5th Floor
New York, NY 10151
Telephone: (212) 935-7400
dquitt@glancylaw.com

Mark A. Finkelstein
Molly J. Magnuson
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052
mfinkelstein@umbergzipser.com
mmagnuson@umbergzipser

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B), as modified by Local Rule 32.1(a)(4)(A) and the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-face style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f), the brief contains 12,103 words, including headings, footnotes and citations.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word version 2408 in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: September 19, 2024

                                        /s/ *Peter A. Binkow*
                                        Peter A. Binkow